**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| STEVEN BUDDINGTON, IRMA DURAL, and MARIE BUSCAINO, individually and on behalf of others similarly situated, | CIVIL ACTION NO. |
| | COMPLAINT |
| Plaintiffs-Petitioners, | CLASS ACTION |
| v. | JURY DEMAND |
| UNITED SERVICES AUTOMOBILE ASSOCIATION, USAA GENERAL INDEMNITY COMPANY, and GARRISON PROPERTY & CASUALTY INSURANCE CO., | |
| Defendants-Respondents. | |

## CLASS ACTION COMPLAINT

Plaintiffs Steven Buddington, Irma Dural and Marie Buscaino are individuals of the full age of majority and citizens of the State of Louisiana who, pursuant to Fed. R. Civ. P. 23(a) and (b)(3), bring this action both individually and on behalf of all other persons similarly situated, (hereinafter referred to as "Plaintiffs" or "Buddington" and/or "Dural" and/or "Buscaino" or "Putative Class Representatives"), against Defendants, United Services Automobile Association ("USAA"), USAA General Indemnity Company ("USAA Gen."), and Garrison Property & Casualty Insurance Co. ("Garrison"), hereinafter collectively described as "Defendants".

## PARTIES

1.      United Services Automobile Association is a San Antonio, Texas insurance company licensed to and conducting business in Louisiana. USAA is incorporated in Texas and has its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288, and

may be served through the Louisiana Secretary of State, 8585 Archives Ave., Baton Rouge, LA, 70809.

2.     USAA General Indemnity Company is a San Antonio, Texas insurance company licensed to and conducting business in Louisiana. USAA Gen. is incorporated in Texas and has its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288, and may be served through the Louisiana Secretary of State, 8585 Archives Ave., Baton Rouge, LA, 70809.

3.     Garrison Property & Casualty Insurance Co. is a USAA affiliate and/or subsidiary, licensed to and conducting business in the State of Louisiana. Garrison is incorporated in Texas and has its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288, and may be served through the Louisiana Secretary of State, 8585 Archives Ave., Baton Rouge, LA, 70809.

4.     Defendants are liable to the Putative Class Representatives and to all others similarly situated for all elements of damages and/or penalties and/or attorneys' fees allowed by Louisiana law, whether past, present, and/or future, in an amount that is just and reasonable in the premises.

5.     Plaintiffs are residents and citizens of the State of Louisiana. At all relevant times to this Complaint, Plaintiff Buddington was a resident of the Parish of Orleans, and was insured under an auto policy issued by USAA; Plaintiff Buscaino was insured under an auto policy issued by USAA Gen.; and Plaintiff Dural was insured under an auto policy issued by Garrison.

**<u>JURISDICTION</u>**

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (a) Plaintiffs are members of the putative classes defined herein, each of which consists of at least 100 members, and Plaintiffs and Defendants are citizens of different states; (b) the amount-in-

controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the 28 U.S.C. § 1332 exceptions apply to this claim.

## VENUE

7.      Venue in this Honorable Court is proper pursuant to 28 U.S.C. 1391(a), because a substantial portion of the acts and course of conduct giving rise to the claims alleged herein occurred within the district and Defendants are subject to personal jurisdiction in this district.

## NATURE OF THE CASE

8.      This is a Louisiana class action lawsuit by Plaintiffs, individually, and on behalf of a putative class of persons (the "Class"), who were insureds under USAA, USAA Gen., and Garrison automobile policies issued for private passenger auto physical damage, pursuant to which Defendants were required to pay the cost to repair or replace an insured vehicle up to the "Actual Cash Value" ("ACV") of the vehicle.

9.      Defendants are large passenger auto insurance carriers operating in the State of Louisiana. Defendants purport to sell consumers comprehensive and collision coverage. However, Defendants systematically and uniformly underpaid Plaintiffs and thousands of other putative Class Members amounts owed to insureds who suffered the total loss of a vehicle insured with comprehensive and collision coverage.

10.     Insureds, such as Plaintiffs and the putative Class Members, pay a premium in exchange for Defendants' promises to repair any damage to an insured vehicle caused by a covered peril. Defendants' obligation to repair damage is not limitless; rather, it is limited (or capped) to the ACV of the insured vehicle – for example, Defendants are not obligated to spend $20,000 to repair extensive damage to a vehicle that is only worth $5,000. Under such circumstances, where the cost to repair damage exceeds the value of the vehicle (less retained value), the vehicle is

considered a "total loss." If a "total loss" occurs, Defendants' contractual obligation is limited to paying the ACV of the total-loss vehicle.

11. ACV is defined by both the Policies and by Louisiana law as the *cost to buy another vehicle*. A settlement for the "actual cash value" of a car must be "based on the actual cost to purchase a comparable motor vehicle." LA. Rev. Stat. Ann. § 22:1892(B)(5); *see also Jouve v. State Farm Fire & Cas. Co.*, 74 So. 3d 220, 229 (La. Ct. App. 2011) ("Under Louisiana law, actual cash value is equal to replacement cost value less depreciation.").

12. To replace a car in Louisiana, an insured is required to pay sales tax and fees required to properly register and title a motor vehicle. Those reasonably necessary fees include a $68.50 title fee, La. R.S. § 32:728, a minimum title transfer handling fee of $8.00, La. R.S. § 32:412.1, and a minimum license plate transfer fee of $3.00., La. R.S. § 47:509(3); Lien Recordation Fee: $10.00–$15.00; Notary Fee: $15.00; License Plate Fee (cars only): $20.00 and up (depending on vehicle price); Transfer License RS 47:461; Plate Fee (trucks only): $3.00 La. R.S. 47:461.

A vehicle will not be legally transferred until the new owner makes proper application for title and pays the concomitant fees.

https://expresslane.dps.louisiana.gov/Notice_of_Transfer/VT_page_1.aspx    (Last    accessed February 24, 2022).

13. Defendants fail and refuse to pay the full ACV replacement cost including but not limited to the full amounts for sales tax, title fees, title transfer fees, and registration transfer fees, despite their obligation to pay insureds the full replacement costs of their vehicles. Defendants

thus breach their policies and Louisiana law by failing to pay the reasonably necessary replacement costs on first party covered total loss claims.

14.    This lawsuit is brought on behalf of Plaintiffs and on behalf of all other similarly situated insureds who have suffered damages due to the Defendants' practice of refusing to pay reasonably necessary ACV in total loss claims under comprehensive and collision coverages.

15.    Replacement cost includes mandatory additional fees incurred to title and register a vehicle because both such charges are necessary to replace a vehicle and ensure it is legally operational on Louisiana roads. Lay dictionaries define "replacement cost" as "the current cost of a replacement for a particular item, especially as opposed to its original cost" or "the current cost of replacing a fixed asset with a new one of equal effectiveness." "Replacement Cost," Oxford English Dictionary Online (last visited July 7, 2021); "Replacement Cost," Merriam-Webster's Unabridged Dictionary (online ed.) (last visited July 7, 2021). Black's defines the replacement cost as "[t]he cost of a substitute asset that is equivalent to an asset currently held . . . [t]he new asset has the same utility but may or may not be identical to the one replaced." "Replacement Cost," Black's Law Dictionary (11th ed. 2019). All of these definitions logically include the costs of Regulatory Fees imposed when replacing a total-loss vehicle with one "of equal effectiveness" or "equivalent to" the total-loss vehicle. A substitute asset would not be equally effective or

equivalent to the original item if it could not be used in the same way, i.e., registered and able to be legally driven, if the Regulatory Fees were not paid for the substitute asset.

## **STATEMENT OF FACTS**

16.    Defendants' Policies covered Plaintiffs and Class Members based on standardized policy language with identical material terms for collision and comprehensive coverage on first-party total loss physical damage claims.

**A.    The Policies Required Defendants to Pay Actual Cash Value, Including Reasonably Necessary Replacement Costs of Sales Tax, Title Transfer Handling Fees and License Plate Transfer Fees on All Total Loss Claims.**

17.    The Policies uniformly promise to pay for "*loss*" to a covered automobile. Relating to physical damage collision coverage, the Policies specifically provide:

> **We** will pay for **loss** caused by **collision** to **your covered auto**, including its equipment, and personal property contained in **your covered auto**, minus any applicable deductible shown on the Declarations.

*See* USAA Gen. Policy for Salvatore J. Buscaino, at p. 26, attached hereto as **EXHIBIT 1**. (emphasis in original).

18.    The Policies explain that Defendants will pay for a covered "loss" by "pay[ing] for loss in money, or repair or replace the damaged or stolen property." *Id.* at 17.

19.    In the same section, under a heading titled "LIMIT OF LIABILITY," the Policies state, in pertinent part:

> A. Total loss to your covered auto.  **Our** limit of liability under Comprehensive Coverage and Collision Coverage is the **actual cash value** of the vehicle, inclusive of any **custom equipment**.

*Id.* at 28 (original emphasis).

The policies define "actual cash value":

> **Actual cash value** means the amount that it would cost, at the time of **loss**, to buy a comparable vehicle. As applied to **your covered auto**, a

> comparable vehicle is one of the same make, model, model year, body type, and option with substantially similar mileage and physical condition.

*Id*. at 25 (emphases in original).

20.    "***Loss***" is defined under the Policy as "direct and accidental damage to the operational safety, function, or appearance of, or theft of, **your covered auto** or personal property contained in **your covered auto**" and includes "total loss" but not "any damage other than the cost to **repair** or replace." *Id.* (emphases in original).

21.    Taken together, these Policy provisions obligate Defendants to pay for "loss" (i.e., damage to the auto) by either paying for the "loss" (i.e., damage) or by actually "repairing or replacing" the vehicle. However, if the cost of paying for the loss (i.e. damage) or the cost of repairing or replacing the vehicle *exceeds* the value of the vehicle, Defendants are entitled under the limitation of liability to elect to pay the "actual cash value" of the vehicle (i.e., replacement cost, less depreciation).

22.    Defendants routinely and uniformly violated the policy provisions requiring that "loss" be paid on comprehensive and collision claims. "Loss" expressly includes a total loss and obligates Defendants to pay actual cash value, *id*. at 16, and pursuant to the policy's definition of ACV. The policy defines ACV as "the amount that it would cost, at the time of **loss**, to buy a comparable vehicle." *Id*. at 14 (original emphasis). Thus, ACV, by the clear terms of the policy, is part of "loss."

23.    The Policies contain no provision setting out a difference in coverage based on whether a total loss vehicle is replaced after the total loss. The Policies contain no provision setting out a difference in coverage based on whether a total loss vehicle is leased, owned, or financed. The Policies impose no condition that an insured replace a total-loss vehicle to receive full coverage under the Policy.

24.    The Policies do not exclude from coverage the reasonably necessary sales tax, title transfer fees, and/or license plate transfer fees.

25.    The Policies incorporate, and are subject to, Louisiana law:

CONFORMITY TO LAW

If any of the terms of this policy conflict with state or local laws, state or local laws will apply.

*Id*. at 31.

26.    A vehicle may be declared a total loss if "[r]epairs may not be economically practical," if "[i]t may not be possible to restore the vehicle to a safe, pre-accident condition" or where "[s]tate laws may require [USAA] to declare it a total loss."  USAA.COM; *FAQs: Total Loss.*    https://www.usaa.com/inet/wc/auto-insurance-claims-faq-policy-holder-total-loss?akredirect=true (last visited February 10, 2022).

27.    Defendants represent on their website that, if a car is "totaled," USAA/USAA Gen. will pay their insured "the actual cash value (ACV) of the car, minus [the] applicable deductible." USAA.COM; *What happens when your car is totaled?* https://www.usaa.com/inet/wc/advice-auto-what-happens-when-your-car-is-totaled? (last visited on February 10, 2022).

28.    Defendants represent, both through their Policies and through statements on their website, that "actual cash value" means the actual cost of replacing the totaled, insured vehicle.

**B.    The Policies and Louisiana Law Required Defendants to Pay Title Transfer Handling Fees and License Plate Transfer Fees on Total Loss Claims.**

29.    ACV replacement costs include sales tax, title fees, title transfer fees, registration and plate fees and other reasonably likely county and state fees incurred incident to transfer of ownership, which are necessary to replace a total loss vehicle and must have been paid by Defendants under the Policy and Louisiana law.

30.     Throughout the class period, Louisiana levied a sales and use tax on the sale or lease of any automobile sold or leased throughout the State of Louisiana. La. R.S. §§ 47:301-37:318.

31.     Throughout the class period, Louisiana prohibited the purchase, transfer, or lease of a vehicle without the transfer of title, and the payment of a minimum $8.00 title transfer handling fee. La. R.S. § 32:412.1 (A)(3)(b):

> A.   Except as provided for in Subsection E of this Section, the office of motor vehicles shall collect, in addition to any fee authorized by law, a handling charge of eight dollars for each of the following transactions:
> …
> (3) Vehicle titling and registration:
> …
> (b) Transfer of ownership.

32.     Throughout the class period, Louisiana required the payment of a registration transfer fee of at least $3.00 to complete the purchase, transfer, or lease of a private passenger vehicle. La. R.S. § 47:509 (B)(3) ("To effect such transfer and registration the owner of the vehicle shall pay a total registration transfer fee of three dollars. Such fee shall cover only the transfer of said registration.").

33.     Throughout the class period, Louisiana required payment of a $68.50 title fee to effect the transfer or ownerships of a motor vehicle. La. R.S. § 32:728 (a vehicle will not be legally transferred until the new owner makes proper application for title).

https://expresslane.dps.louisiana.gov/Notice_of_Transfer/VT_page_1.aspx.

**C.    USAA Breached Its Policy with Plaintiff Buddington by Failing to Pay Reasonably Necessary Replacement Costs on Her Total Loss Claim.**

34.    Plaintiff Buddington entered a Louisiana automobile policy agreement to be insured by USAA under terms contained in the "form" policy.

35.    The Policy provided physical damage coverage for Plaintiff Buddington's 2017 Toyota Corolla LE, VIN 5YFBURHE6HP698438 ("Buddington's Vehicle").

36.    Buddington's Vehicle was titled and registered in accordance with Louisiana law. Plaintiff paid sales tax, title fees and registration fees for the total loss vehicle prior to the loss.

37.    On or about July 21, 2018, Plaintiff Buddington was involved in an auto collision while operating Buddington's Vehicle. Plaintiff submitted a claim to USAA for Buddington's Vehicle physical damage caused by the collision, claim number 020268562–010.

38.    Because USAA determined that the cost to repair exceeded the cost to replace the vehicle, USAA declared that Buddington's Vehicle was a "total loss."

39.    USAA determined Buddington's Vehicle had an actual cash value of $14,845.00. *See* Total Loss Settlement Letter for Steve A. Buddington, attached hereto as **EXHIBIT 2**.

40.    USAA subtracted the deductible of $500.00, added $1,402.85 for state sales tax, and then added a post-tax adjustment of $68.50, and a registration fee of $8.00. USAA made a final payment of $15,824.35 to Plaintiff Buddington. *See id.*

41.    The title transfer fee paid on Plaintiff Buddington's claim was $8.00 pursuant to La. R.S. § 32:412.1(A)(3)(b). The registration transfer fee owed on Plaintiff Buddington's claim was $3.00 pursuant to La. R.S. 47:509(B)(3). The title fee was $68.50. La. R.S. § 32:728. Additionally, Plaintiff was owed a title fee of $30, and two notary fees of $15 each for the title and the bill of sale.

42.    USAA breached its Policy by failing to pay all reasonably necessary replacement costs to Plaintiff Buddington, including the lien recordation fee, notary fee, and license plate transfer fee.

43.    Plaintiff Buddington was damaged by USAA's breach.

**D.    Garrison Breached Its Policy with Plaintiff Dural by Failing to Pay Reasonably Necessary Replacement Costs on His Total Loss Claim.**

44.    Plaintiff Dural entered a Louisiana automobile policy agreement to be insured by Garrison under terms contained in the form policy. The Policy provided physical damage coverage for Plaintiff Dural's 2010 Nissan Altima VIN 1N4SL2AP8AN420358.

45.    Dural's vehicle was titled and registered in accordance with Louisiana law. Plaintiff Dural paid sales tax, title fees and registration fees for Dural's vehicle prior to the loss.

46.    On or about February 7, 2019, Plaintiff Dural was involved in an auto collision while operating her vehicle. Plaintiff Dural submitted a claim to Garrison for the physical damage caused by the collision, claim number 015644051–024.

47.    Because Garrison determined that the cost to repair exceeded the cost to replace the vehicle, Garrison declared Dural's vehicle a "total loss." Garrison determined Dural's vehicle had an actual cash value of $4,851.25. *See* USAA Claim Information Letter & attachments, attached hereto as **EXHIBIT 3**.

48.    Dural decided to salvage the vehicle. To determine the claim payment, Garrison subtracted the $1,000.00 deductible and the $1,334.00 salvage value from the ACV, and added state sales tax of $297.21 and the salvage title fee of $68.50. *Id.*

49.    Garrison breached its Policy by failing to pay all reasonably necessary replacement costs to Plaintiff Dural, including, but not limited to, the title transfer handling fee, lien recordation fee, notary fee, and license plate transfer fee.

50.    Additionally, Garrison failed to pay the full amount of sales tax owed on Dural's total loss vehicle. Garrison improperly reduced the tax basis for the total loss vehicle by the salvage value of the vehicle because it was salvaged, thereby further depriving Plaintiff Dural of the ACV of her vehicle. *See* Ex. C.

51.    Plaintiff Dural was damaged by USAA's breach.

**E.    USAA Gen. Breached Its Policy with Plaintiff Buscaino by Failing to Pay Reasonably Necessary Replacement Costs on His Total Loss Claim.**

52.    Plaintiff Buscaino entered a Louisiana automobile policy agreement to be insured by USAA Gen. under terms contained in the form policy. The Policy provided physical damage coverage for Plaintiff Buscaino's 2013 Toyota Corolla VIN 5YFBU4EE1DP118174. *See* Ex. A.

53.    Buscaino's Vehicle was titled and registered in accordance with Louisiana law. Plaintiff Buscaino paid sales tax, title fees and registration fees for the total loss vehicle prior to the loss.

54.    On or about August 12, 2016, Plaintiff Buscaino was involved in an auto collision while operating her vehicle. Plaintiff Buscaino submitted a claim to USAA Gen. for the physical damage caused by the collision, claim number 033844080-001.

55.    Because USAA Gen. determined that the cost to repair exceeded the cost to replace the vehicle, USAA Gen. declared that Buscaino's Vehicle was a "total loss."

56.     USAA Gen. determined Buscaino's Vehicle had an actual cash value of $14,131.00. *See* Total Loss Settlement Letter for Salvatore J. Buscaino, attached hereto as **EXHIBIT 4**.

57.     USAA Gen. subtracted the deductible of $500.00, added $1,483.76 for state sales tax and $76.50 for "other vehicle and transfer fees." Upon information and belief, the $76.50 in "other vehicle and transfer fees" was comprised of the $68.50 title fee and $8.00 title transfer fee. *See id.*

58.     USAA Gen. breached its Policy by failing to pay all reasonably necessary replacement costs to Plaintiff Buscaino, including, but not limited to, the lien recordation fee, notary fee, and license plate transfer fee.

59.     Plaintiff Buscaino was damaged by USAA Gen.'s breach.

**F.    Defendants Breached Their Policies with All Class Members by Failing to Pay the Replacement Costs on Their Total Loss Claims.**

60.     Each Class Member insured by USAA, Garrison, or USAA Gen. was insured for total losses under the same material terms as the Policies insuring Plaintiffs.

61.     Like the named Plaintiffs, each Class Member submitted a claim to Defendants during the class period, which Defendants determined was a covered total loss.

62.     Defendants breached their insurance policies with each Class Member by failing to pay all reasonably necessary replacement costs on the Class Member's total loss claim.

63.     Plaintiffs satisfied all terms of the Policies and all conditions precedent, such that their insurance policies were in effect and operational at the time of their respective accidents, and their total loss claims were deemed covered claims by Defendants.

**G.    Plaintiffs and Class Members Pray for Expenses of Litigation Pursuant to La. R.S. § 22:1892 and La. R.S. § 22:1973.**

64.    Plaintiffs and Class Members are entitled to expenses of litigation, including all attorneys' fees and costs pursuant to La. R.S. § 22:1892(B)(1) and La. R.S. § 22:1973.

65.    Defendants have acted in bad faith and their respective failure to pay full ACV replacement costs was arbitrary, capricious, or without probable cause. Defendants caused Plaintiffs and Class Members unnecessary trouble and expense by USAA's failure to comply with the clear requirements of the Policies and Louisiana law.

66.    There is no legal justification for USAA's conduct in failing to pay full ACV replacement costs on Louisiana first-party total loss claims.

## CLASS ACTION ALLEGATIONS

67.    Plaintiffs bring this lawsuit as a class action seeking representation of the Class pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3) and/or (c)(4), as may be deemed appropriate by the Court.

68.    Plaintiffs assert claims for breach of contract on behalf of the Classes defined as follows:

### USAA CLASS

All Louisiana residents who were insured under a motor-vehicle policy issued by USAA in the State of Louisiana with comprehensive and/or collision coverage, submitted a covered first-party physical damage claim, and whose claim was adjusted as a total loss and resulted in a total-loss payment from USAA during the period of limitations through the date of class certification.

### GARRISON CLASS

All Louisiana residents who were insured under a motor-vehicle policy issued by Garrison in the State of Louisiana with comprehensive and/or collision coverage, submitted a covered first-party physical damage claim, and whose claim was adjusted as a total loss and resulted in a total-loss

payment from Garrison during the period of limitations through the date of class certification.

## USAA GEN. CLASS

All Louisiana residents who were insured under a motor-vehicle policy issued by USAA Gen. in the State of Louisiana with comprehensive and/or collision coverage, submitted a covered first-party physical damage claim, and whose claim was adjusted as a total loss and resulted in a total-loss payment from USAA Gen. during the period of limitations through the date of class certification.

Plaintiffs reserve the right to amend these class definitions as additional facts are discovered and become known.

69.    Excluded from the Classes are all officers and employees of USAA, Garrison, and USAA Gen. and their affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from the Classes; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

70.    **Numerosity.** Although the precise number of members of the class are unknown to Plaintiffs at this time and can only be determined through appropriate discovery, Plaintiffs believe that because Defendants are large motor vehicle insurers in Louisiana, the class of persons affected by Defendants' unlawful practice consists of thousands of individual or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. Upon information and belief, including the investigation of the undersigned counsel, Plaintiffs believe Class Members number in the thousands. Thus, numerosity within the meaning of Rule 23(a)(1) is established.

71.    **Commonality.** There are issues of law and fact common to all Class Members within the meaning of Rule 23(a)(2), the resolution of which will resolve virtually the entire litigation in a single stroke. Central issues in this litigation turn on interpretation of materially

identical policy provisions; thus, this case is well-suited for class-wide adjudication. Common questions include (but are not limited to):

    a.    Whether the Policy includes coverage for full ACV replacement costs, including title fees, title transfer fees, license plate transfer fees, title lien fees, notary fees, and full sales tax; and

    b.    Whether Defendants breached their Policies by failing to pay full ACV replacement costs, including title fees, title transfer fees, license plate transfer fees, title lien fees, notary fees, and/or full sales tax.

Thus, commonality is established within the meaning of Rule 23(a)(2).

72.    **Typicality.** Typicality is satisfied with respect to each individual class:

    a.    Plaintiffs' claims and defenses are typical of the claims of all respective Class Members. USAA, Garrison, and USAA Gen. injured Plaintiffs and Class Members through uniform misconduct and Plaintiffs' legal claims arise from the same core practice—Defendants' failure to pay full ACV, including title fees, title transfer fees, license plate transfer fees, title lien fees, notary fees, and full sales tax on first-party total loss claims under Louisiana physical damage policies. Plaintiffs suffered the same harm as all Class Members: damages for unpaid replacement costs required under their Policies. Plaintiffs' interests are identical to those of the other Class Members, within the meaning of Rule 23(a)(3).

73.    **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the Classes because:

a)    Plaintiffs have retained counsel experienced in litigating consumer class actions and complex litigation, and counsel will adequately represent the interests of both Classes;

b)    Plaintiffs and their counsel are aware of no conflicts of interest between Plaintiffs and absent Class Members or otherwise;

c)    Plaintiffs and their counsel have adequate financial resources to assure that the interests of the Class Members will not be harmed; and

d)    Plaintiffs are knowledgeable concerning the subject matter of this action and will assist counsel in the prosecution of this litigation and protection of the putative Class Members interests in this regard.

Thus, adequacy is established within the meaning of Rule 23(a)(4).

74.    A class action provides a fair and efficient method for adjudicating this controversy and is superior to other available methods of adjudication in that:

a)    Neither the size of the Classes, nor any other factor, make it likely that difficulties will be encountered in the management of the Classes;

b)    The prosecution of separate actions by individual Class Members, or the individual joinders of all Class Members in this action, is impracticable and would create a massive and unnecessary burden on the resources of the courts and could result in inconsistent adjudication, while a single class action can determine, with judicial economy, the rights of each member of the Class;

c)    Because of the disparity of resources available to Defendants versus those available to individual Class Members, prosecution of separate actions would work a financial hardship on many Class Members;

d)   The conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each Class Member and meets all due process requirements as to fairness to all parties. A class action is also superior to the maintenance of these claims on a claim-by-claim basis when all actions arise out of the same circumstances and course of conduct; and

e)   Because the claims may be small or nominal in nature, individual actions will be rendered financially impractical if not impossible.

### COUNT I: BREACH OF CONTRACT
**(on behalf of the USAA Class)**

75.   The allegations of paragraphs 1 through 74 are hereby incorporated by reference.

76.   Plaintiff Buddington and all USAA Class Members were covered insureds under Policies issued by USAA and complied with all Policy terms relating to their total loss claims.

77.   The interpretation of Plaintiff's and all other USAA Class Members' Policies is governed by Louisiana Law.

78.   Plaintiff Buddington and all USAA Class Members made a claim under their Policy that USAA determined to be a first-party total loss covered claim.

79.   USAA, by paying the total loss claims, determined that Plaintiff and each Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the Policies for each insured to be paid on his or her total loss.

80.   USAA failed to pay Plaintiff and all Class Members full ACV replacement costs, including all title fees, title transfer fees, license plate transfer fees, title lien fees, notary fees, and/or full sales tax.

81.   USAA's failure to pay Plaintiff and Class Members full ACV replacement costs constitutes a breach of USAA's Policies.

82.    As a result of USAA's breaches, Plaintiff and Class Members have suffered damages and are entitled, under their Policies, to sums representing all ACV replacement costs, including but not limited to unpaid sales tax on the value of the total loss vehicle at the time of loss, unpaid title fees, title transfer fees, license plate transfer fees, title lien fees, and notary fees, as well as prejudgment and post judgment interest, attorneys' fees, and all costs and expenses of litigation.

83.    Plaintiffs and the Class Members are entitled to an award of attorneys' fees and costs under Louisiana law and all contractual and statutory provisions allowing for recovery of attorneys' fees.

## COUNT II: BREACH OF CONTRACT
### (on behalf of the Garrison Class)

84.    The allegations of paragraphs 1 through 74 are hereby incorporated by reference.

85.    Plaintiff Dural and all Garrison Class Members were covered insureds under Policies issued by Garrison and complied with all Policy terms relating to their total loss claims.

86.    The interpretation of Plaintiff's and all other Garrison Class Members' Policies is governed by Louisiana Law.

87.    Plaintiff Dural and all Garrison Class Members made a claim under their Policy that Garrison determined to be a first-party total loss covered claim.

88.    Garrison, by paying the total loss claims, determined that Plaintiff and each Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the Policies for each insured to be paid on his or her total loss.

89.    Garrison failed to pay Plaintiff and all Class Members full ACV replacement costs, including all title fees, title transfer fees, license plate transfer fees, title lien fees, notary fees, and/or full sales tax.

90.    Garrison's failure to pay Plaintiff and Class Members full ACV replacement costs constitutes a breach of Garrison's Policies.

91.    As a result of Garrison's breaches, Plaintiff Dural and Garrison Class Members have suffered damages and are entitled, under their Policies, to sums representing all ACV replacement costs, including but not limited to unpaid sales tax on the value of the total loss vehicle at the time of loss, unpaid title fees, title transfer fees, license plate transfer fees, title lien fees, and notary fees, as well as prejudgment and post judgment interest, attorneys' fees, and all costs and expenses of litigation.

92.    Plaintiffs and the Class Members are entitled to an award of attorneys' fees and costs under Louisiana law and all contractual and statutory provisions allowing for recovery of attorneys' fees.

## COUNT III: BREACH OF CONTRACT
### (on behalf of the USAA Gen. Class)

93.    The allegations of paragraphs 1 through 74 are hereby incorporated by reference.

94.    Plaintiff Buscaino and all USAA Gen. Class Members were covered insureds under Policies issued by USAA Gen. and complied with all Policy terms relating to their total loss claims.

95.    The interpretation of Plaintiffs' and all other USAA Gen. Class Members' Policies is governed by Louisiana Law.

96.    Plaintiff Buscaino and all USAA Gen. Class Member made a claim under their Policy that USAA Gen. determined to be a first-party total loss covered claim.

97.    USAA Gen., by paying the total loss claims, determined that Plaintiffs and each Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the Policies for each insured to be paid on his or her total loss.

98.     USAA Gen. failed to pay Plaintiffs and all Class Members full ACV replacement costs, including all title fees, title transfer fees, license plate transfer fees, title lien fees, notary fees, and/or full sales tax.

99.     USAA Gen.'s failure to pay Plaintiffs and Class Members full ACV replacement costs constitutes a breach of USAA's Policies.

100.    As a result of USAA Gen.'s breaches, Plaintiffs and Class Members have suffered damages and are entitled, under their Policies, to sums representing all ACV replacement costs, including but not limited to unpaid sales tax on the value of the total loss vehicle at the time of loss, unpaid title fees, title transfer fees, license plate transfer fees, title lien fees, and notary fees, as well as prejudgment and post judgment interest, attorneys' fees, and all costs and expenses of litigation.

101.    Plaintiffs and the Class Members are entitled to an award of attorneys' fees and costs under Louisiana law and all contractual and statutory provisions allowing for recovery of attorneys' fees.

### COUNT IV: PENALTIES AND EXPENSES OF LITIGATION
#### (La. R.S. § 22:1892 and La. R.S. § 22:1973)

102.    The allegations in paragraphs 1 through 74 are hereby incorporated by reference.

103.    La. R.S. § 1892 requires an insurer to pay its insureds the amount of a claim due within thirty days after receipt of proof of loss.

104.    La. R.S. 22:1973(A) requires an insurer to act with good faith and fair dealing, to adjust claims fairly and promptly, and to make a reasonable effort to settle claims with the insured.

105.    USAA and USAA Gen. violated La. R.S. § 1892 and § 1973 by failing to pay Plaintiffs and all Class Members full ACV after determining that the vehicles sustained total losses.

106.    At the time Defendants declared the vehicles total losses, Defendants knew that their Policies obligated them to pay full replacement costs of the vehicles, less depreciation.

107.    Defendants advertised on their website that ACV meant the cost to replace the vehicle based on the cost of comparable vehicles in the insured's geographic area. https://www.usaa.com/inet/wc/auto-insurance-claims-faq-policy-holder-total-loss    (last    visited February 11, 2022). This definition was confirmed by specific language in its auto Policies, written throughout the State of Louisiana.

108.    Despite their obligation to pay ACV, Defendants failed to pay Plaintiffs and Class Members the full amount owed within thirty days of receipt of proof of the loss.

109.    USAA and USAA Gen. have acted in bad faith and caused Plaintiffs and Class Members unnecessary trouble and expense by failing to comply with the clear requirements of the Policies and Louisiana law.

110.    In addition, Defendants' failure to promptly pay its insureds the amounts due on their claims was "arbitrary, capricious, or without probable cause," triggering Plaintiffs' and Class Members' entitlement to penalties prescribed by La. R.S. §§ 22:1973 and 22:1892.

111.    There is no legal justification for Defendants' conduct in failing to pay full ACV replacement costs, including title transfer handling fees and license plate transfer fees, on Louisiana first-party total loss claims.

112.    Plaintiffs and Class Members are entitled to, and expressly pray for, expenses of litigation, including all attorneys' fees and costs pursuant to La. R.S. § 22:1892(B)(1) and La. R.S. § 22:1973.

## JURY DEMAND

Plaintiffs, individually and on behalf of the putative Classes, respectfully requests a trial by jury on all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of the Classes of all other persons similarly situated, respectfully pray that Defendants United Services Automobile Association, USAA General Indemnity Company, and Garrison Property & Casualty Insurance Co., be duly served with this Complaint, be required to appear and answer the same, and after due proceedings had, that there by judgment rendered herein in favor of Plaintiffs and the Classes, and against Defendants as follows:

    a)      For an order certifying this action as a class action on behalf of the Classes, with Plaintiffs serving as representatives of the Classes and with the undersigned serving as Counsel for the Classes;

    b)      For notice to be sent to the Classes in a form and manner approved by the Court and comporting with due process;

    c)      For an award of compensatory damages in amounts owed pursuant to the policies of insurance and Louisiana law;

    d)      For an award of penalties, attorneys' fees and/or expenses pursuant to La. R.S. §22:1892(B)(1) and/or La. R.S. §22:1973, and/or other applicable law;

    e)      For costs of suit incurred herein;

    f)      For pre-judgment and post-judgment interests on any amounts awarded; and

g)      For such other general and/or equitable relief to which the Plaintiffs and/or the

Classes may be entitled that this Court deems just and proper.

This 31st day of May, 2022.

Respectfully submitted,

*/s/* Stephen J. Herman
**Stephen J. Herman**, La. Bar No. 23129
**Brian D. Katz**, La. Bar No. 24137
**Soren E. Gisleson**, La. Bar No. 26302
**John S. Creevy**, La. Bar No. 30879
**HERMAN HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 561-6024
E-Mail: sherman@hhklawfirm.com
E-Mail: bkatz@hhklawfirm.com
E-Mail: sgisleson@hhklawfirm.com
E-Mail: jcreevy@hhklawfirm.com


**Edmund A. Normand**
*(pro hac vice pending)*
Florida Bar No. 865590
**Amy L. Judkins** *(pro hac vice pending)*
Florida Bar No. 125046
**Jacob L. Phillips** *(pro hac vice pending)*
Florida Bar No. 120130
**Joshua R. Jacobson** *(pro hac vice pending)*
Florida Bar No. 1002264
**NORMAND PLLC**
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Tel: 407-603-6031
E-Mail: ed@normandpllc.com
E-Mail: amy.judkins@normandpllc.com
E-Mail: jacob.phillips@normandpllc.com
E-Mail: josh.jacobson@normandpllc.com
E-Mail: ean@normandpllc.com


*Attorneys for Plaintiffs & Proposed Classes*